EDWARDS, Judge.
In February, 1984, the State of Louisiana invited private firms to bid for State printing business. The Director of State Purchasing circulated a document entitled “General Instructions and General Specifications for State Printing Contracts” to provide interested parties with the rules and forms for submitting bids. Baton Rouge Printing Company, plaintiff herein, submitted a timely proposal in Category 24, “pamphlets and books of a certain size.” Other bids were submitted by Moran Color-graphics, Accu-Graphics, Inc., Bourque L & R Printing, Inc., and Heritage Press, Inc., an out-of-state vendor.
Category 24 bids were opened on March 2, 1984. Hugh Carleton, Director of State Purchasing, notified Baton Rouge Printing by letter dated March 27, 1984, that the contract would be awarded to Moran Color-graphics. BRPC protested the award in a letter to Director Carleton dated April 2, 1984. The Director convened a hearing on April 11, 1984, with himself as the hearing examiner.
Examiner Carleton introduced various letters and documents into evidence, including the bids submitted for Category 24. The State and all bidders were represented at the hearing, but only Baton Rouge Printing Company presented testimony and exhibits of its own.
Two weeks later, on April 24, 1984, Examiner Carleton issued a written opinion denying BRPC’s protest and affirming the Category 24 contract award to Moran Col-orgraphics. BRPC took an administrative appeal to the Commissioner of Administration, Stephanie L. Alexander. She affirmed.
On May 30, 1984, Baton Rouge Printing took a judicial appeal to the Nineteenth Judicial District Court in the Parish of East Baton Rouge. After hearing arguments and accepting written briefs on behalf of BRPC and the State of Louisiana, the trial court affirmed the judgment. BRPC now appeals the case to this court.
Certain language under the heading Evaluation of Bid in the bid document reads as follows:
2. A bidder is disqualified if the Commissioner of Administration, or his designated representative determines that the *207 bidder cannot successfully fulfill the contract due to any of the following:
a. Quality — the bidder is required to submit a sample of work similar to this category to exhibit his ability to perform the contract at the quality standard desired.
b. Personnel, Plant and Equipment— the bidder is required to complete a “Plant and Equipment Statement”. The successful bidder must have personnel, plant and equipment to produce the printing contracted for. This does not mean that the printer must produce the job entirely in his plant. It is understood that in the Printing Industry trade shops often furnish components such as type, separations, binding, electrotyping, engravings, die cutting, and other specialized outside purchases and services.
A disqualification would occur, for example, if the majority of the category contract is typesetting, but the bidder’s facilities for typesetting are inadequate and he intends to purchase the typesetting outside. In essence, you must have personnel, plant and equipment to fulfill the job.
c. The bidder has not furnished a bond or certified check in the stated amount with the bid proposal.
d. When the unit bids, not used in weighting of the contact in the Bid Schedule, are inconsistent with the cost for similar units of materials, services and other charges elsewhere in the contract. (Emphasis in original text)
Plaintiffs appeal is based on paragraph 2(d) and the nature of the printing business. In uncontradicted testimony, BRPC showed the printing business to be a “decreasing cost” business. Every printing job has a setup or initial cost. After that, the longer the presses run, the more the cost is spread over the job. This results in a progressively lower cost per page as more pages are printed.
There was uncontradicted testimony by three experienced printers, including the president of BRPC, on the nature of consistency in the bidding. They testified that consistency results in a mathematically progressive pricing structure, regardless of weighting factors assigned to various quantities.
The witnesses demonstrated clearly that BRPC’s bid was consistent in this mathematical progression and that the opposing bids were not. Although the other printing companies were represented at the hearing, no one made any attempt to refute plaintiff’s case..
The basic difference between plaintiff’s bid and the others was that the other bids were not progressively uniform. This produced strange results in terms of pricing. BRPC exhibit no. 3 showed one such result. The same text of approximately one thousand words was printed twice, with an equal number of keystrokes required to typeset each. The only difference was Vi6 th of an inch in width: the left column of 1,000 words was 3½ inches wide and the right column of the same 1,000 words was 3¾6 inches wide. BRPC’s price for both columns was the same, due to its consistent bidding. Moran Colorgraphics quoted a price of $8.48 for the left column and $23.81 for the right column.
BRPC exhibit no. 2 demonstrated a similar pricing inconsistency. The same number of words were set in a 3-inch column and a 6-inch column. BRPC priced both at $12.77. Moran charged $7.06 for the narrow column and $19.66 for the wider one.
Other examples of pricing inconsistencies were placed in the record. No one from either the State or the other printers disputed the testimony’s accuracy.
Plaintiff bases its appeal on these inconsistencies in light of Section 2(d) quoted above, which says:
2. A bidder is disqualified if the Commissioner of Administration, or his designated representative, determines that the bidder cannot successfully fulfill the contract due to any of the following: d. When the unit bids, not used in weighting of the contract in the Bid Schedule, are inconsistent with the cost for similar units of materials, services *208 and other charges elsewhere in the contract.
Plaintiff urges that the inconsistencies in competing bids are sufficient to disqualify those bids under 2(d). The State disagrees, arguing that 2(d) is only applicable if the Commissioner of Administration invokes it by determining a disqualification. Since the Commissioner expressly found Moran Colorgraphics able to fulfill the contract, the State urges that paragraph 2 does not apply at all.
We hold that the State's position lacks merit because of its uneven application; that is to say, the provisions of section 2 are primarily a screening device. It is plain that no bid will be considered without a work sample, a plant and equipment statement, and a bond or certified check. Section (d) relating to consistency within the bidding does not have the tangibility of the other requirements, but it has the same standing. Section (d) cannot be arbitrarily waived, anymore than can the other provisions of paragraph 2.
We conclude, therefore, that all the provisions of Paragraph 2 apply as an evaluation of all bids. The Commissioner may find a disqualification when he evaluates the bids, but he cannot pass over an obvious disqualification by means of capricious waiver. LSA-R.S. 39:1594(E) provides in part that “Bids shall be evaluated based on the requirements set forth in the invitation for bids, which may include criteria to determine possible acceptability_ The invitation for bids shall set forth the evaluation criteria to be used.”
It is obvious from this language that the Commissioner is bound by the criteria which he selects. There is no provision for waiver of any sort.
Applying section 2(d) to the bids in question, we find plaintiff’s bid to be the only consistent one. This is clear from the testimony, in which BRPC’s case went unrebut-ted. It is further supported in the State’s appeal brief wherein counsel says, referring to plaintiff, “... it was the only bidder who attempted to bid in a mathematically consistent fashion ...” (at page 4).
“Responsive bidder,” as defined by LSA-R.S. 39:1591(8), is “a person who has submitted a bid under R.S. 39:1594 which conforms in all substantive respects to the invitation for bids, including the specifications set forth in the invitation.”
Based on the record in this case and on the statutory law, we hold that the Commissioner of Administration was in error as a matter of law in her interpretation of Section 2(d) of the bid document in awarding the Category 24 printing contract to Moran Colorgraphics. LSA-R.S. 49:964(G)(4). We declare that contract void, reversing the judgment of the trial court.
Costs of $160.69 are taxed to the defendant.
REVERSED.
PONDER, J., concurs in result and will assign reasons.